**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

SHIVA STEIN,

      Plaintiff,

v.

SOTHEBY'S, JESSICA M. BIBLIOWICZ, LINUS W.L. CHEUNG, KEVIN C. CONROY, DOMENICO DE SOLE, THE DUKE OF DEVONSHIRE, DANIEL S. LOEB, MARSHA E. SIMMS, THOMAS S. SMITH, JR., DIANA L. TAYLOR, DENNIS M. WEIBLING, HARRY J. WILSON, MICHAEL J. WOLF,

      Defendants.

------------------------------------------------------------

CIV. NO. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.    This is an action brought by Plaintiff against Sotheby's ("Sotheby's or the "Company"), the members Sotheby's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Sotheby's by BidFair USA LLC and its affiliate ("BidFair").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 12, 2019 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby BidFair MergeRight Inc. ("Merger Sub"), a Delaware corporation and wholly owned subsidiary of BidFair, will merge with and into Sotheby's with Sotheby's surviving the merger as a wholly-owned subsidiary of BidFair (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Sotheby's common share issued and outstanding will be converted into the right to receive $57.00 in cash (the "Merger Consideration").

3. Defendants have now asked Sotheby's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning, among other things, (i) Sotheby's financial projections, relied upon by the Company's financial advisors, LionTree Advisors LLC ("LionTree") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by LionTree; and (iii) the background process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Sotheby's stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sotheby's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant is headquartered in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Sotheby's is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Sotheby's common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jessica M. Bibliowicz has served as a member of the Board since 2014.

11. Individual Defendant Linus W.L. Cheung has served as a member of the Board since 2016.

12. Individual Defendant Kevin C. Conroy has served as a member of the Board since 2014.

13. Individual Defendant Domenico De Sole has served as a member of the Board since 2013 and is the Chairman of the Board.

14. Individual Defendant Duke of Devonshire is the Deputy Chairman of the Board has served as a member of the Board since 1994.

15. Individual Defendant Daniel S. Loeb has served as a member of the Board since 2014.

16. Individual Defendant Marsha E. Simms has served as a member of the Board since 2011.

17. Individual Defendant Thomas S. "Tad" Smith, Jr. is the Company's President and Chief Executive ("CEO") and has been a member of the Board since 2015.

18. Individual Defendant Diana L. Taylor has served as a member of the Board since 2007.

19. Individual Defendant Dennis M. Weibling has served as a member of the Board since 2006.

20. Individual Defendant Harry J. Wilson has served as a member of the Board since 2014.

21. Individual Defendant Michael J. Wolf has served as a member of the Board since 2019.

22. Defendant Sotheby's is incorporated in Delaware and maintains its principal offices at 1334 York Avenue, New York, New York 10021. The Company's common stock trades on the New York Stock Exchange under the symbol "BID."

23. Non-party BidFair is a Delaware limited liability company and an entity wholly owned by media and telecom entrepreneur as well as art collector, Patrick Drahi.

24. Non-party Merger Sub is an indirect wholly-owned subsidiary of BidFair, formed solely for the purposes of effectuating the Proposed Transaction.

25. The defendants identified in paragraphs 10-21 are collectively referred to as the "Individual Defendants" or the "Board."

26. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

27. Sotheby's, incorporated on March 30, 2006, is a global art business company. The Company is engaged in offering its clients opportunities to connect with and transact in a range of objects. The Company offers a range of art-related services, including the brokerage of private art sales, private jewelry sales through Sotheby's Diamonds, private selling exhibitions at its galleries, art-related financing, and art advisory services, as well as retail wine locations in New York and Hong Kong. The Company operates through two segments: Agency and Finance. The Agency segment matches buyers and sellers of authenticated fine art, decorative art, jewelry, wine and collectibles (collectively, art or works of art or artwork or property) through the auction or private sale process. Its Agency segment activities also include the sale of artworks that are principally acquired incidental to the auction process and the activities of RM Sotheby's, an equity investee that operates as an auction house for investment-quality automobiles. The

5

Finance segment earns interest income through art-related financing activities by making loans that are secured by works of art. The Company's advisory services are classified within All Other segment, along with its retail wine business, brand licensing activities, the activities of Acquavella Modern Art (AMA), an equity investee, and sales of the remaining inventory of Noortman Master Paintings, an art dealer.

> 28. On June 17, 2019, the Company announced the Proposed Transaction:
>
> NEW YORK, June 17, 2019 /PRNewswire/ -- Sotheby's (NYSE: BID) today announced that it has signed a definitive merger agreement to be acquired by BidFair USA, an entity wholly owned by media and telecom entrepreneur as well as art collector, Patrick Drahi. Under the terms of the agreement, which was approved by Sotheby's Board of Directors, shareholders, including employee shareholders, will receive $57.00 in cash per share of Sotheby's common stock in a transaction with an enterprise value of $3.7 billion. The offer price represents a premium of 61% to Sotheby's closing price on June 14, 2019, and a 56.3% premium to the company's 30 trading-day volume weighted average share price. The transaction would result in Sotheby's returning to private ownership after 31 years as a public company traded on the New York Stock Exchange.
>
> Tad Smith, Sotheby's CEO, said, "Patrick Drahi is one of the most well-regarded entrepreneurs in the world, and on behalf of everyone at Sotheby's, I want to welcome him to the family. Known for his commitment to innovation and ingenuity, Patrick founded and leads some of the most successful telecommunications, media and digital companies in the world. He has a long-term view and shares our brand vision for great client service and employing innovation to enhance the value of the company for clients and employees. This acquisition will provide Sotheby's with the opportunity to accelerate the successful program of growth initiatives of the past several years in a more flexible private environment. It positions us very well for our future and I strongly believe that the company will be in excellent hands for decades to come with Patrick as our owner."
>
> Domenico De Sole, Chairman of Sotheby's Board of Directors, said, "Following a comprehensive review, the Board enthusiastically supports Mr. Drahi's offer, which delivers a significant premium to market for our shareholders. After more

than 30 years as a public company, the time is right for Sotheby's to return to private ownership to continue on a path of growth and success."

"I am honored that the Board of Sotheby's has decided to recommend my offer," commented Patrick Drahi. "Sotheby's is one of the most elegant and aspirational brands in the world. As a longtime client and lifetime admirer of the company, I am acquiring Sotheby's together with my family. We thank Domenico and the rest of the Sotheby's Board for its support and look forward to getting started with Tad and the wonderful members of his team to define our future."

The closing of the deal is subject to customary conditions, including regulatory clearance and shareholder approvals, but is not subject to the availability of financing. The transaction is expected to close in the fourth quarter of 2019 following shareholder approval.

LionTree Advisors is serving as financial advisor to Sotheby's in connection with the transaction, and Sullivan & Cromwell LLP is serving as the company's legal counsel. BNP Paribas and Morgan Stanley are acting as financial advisors to BidFair, BNP Paribas acted as sole financing provider, and Hughes Hubbard & Reed LLP and Ropes & Gray International LLP are serving as its legal advisors.

* * *

29. The Board has agreed to the take-private Proposed Transaction which will deprive the Company's shareholders from enjoying any future growth of the Company. It is therefore imperative that Sotheby's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

*Omissions and/or Material Misrepresentations Concerning Sotheby's Financial Projections*

30. On July 12, 2019, Sotheby's filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the

7

Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

31. The Proxy Statement fails to provide material information concerning financial projections by Sotheby's management and relied upon by LionTree in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that "in the Spring of 2019, at the request of the Board, the Company prepared certain financial forecasts (the "Company projections") to assist the Board with forming a view about the stand-alone valuation of the Company. The Company subsequently provided these forecasts to the Board and LionTree." Proxy Statement at 60. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sotheby's management provided to the Board and LionTree. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

32. For the projections for Sotheby's, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA for

8

the fiscal year ending 20213; and (2) Adjusted EBITDA for years from 2018 through 2023, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement 62.

33. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

35. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

9

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning LionTree's Financial Analyses*

36. With respect to LionTree's *Discounted Cash Flow Analysis* ("DCF"), the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0% and the terminal value multiples of 11.0x to 13.0x; (iii) the basis of using the rate of 13.0% to derive the resulting range of implied equity values; (iv) the net debt of the Company as used by Morgan Stanley in the analysis; and (v) the outstanding shares of Company common stock on a fully-diluted basis as of June 14, 2019.

37. With respect to LionTree's *Analysis Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed by LionTree in the analysis; (ii) the sources thereof; and (iii) the basis for applying the discount rate of 13%.

38. With respect to LionTree's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums paid in the transactions observed by LionTree in the analysis.

*Omissions and/or Material Misrepresentations Concerning The Sales Process*

39. With respect to the *Background of the Merger*, the Proxy Statement fails to disclose whether the confidentiality agreements executed with each member of the Party AB Group contained "don't-ask-don't-waive" provisions, and why the Board agreed to execute an agreement with BidFair that did not contain any standstill provision.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.  The Individual Defendants acted as controlling persons of Sotheby's within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Sotheby's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sotheby's, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sotheby's, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 17, 2019                           Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Benjamin Y. Kaufman*
   Benjamin Y. Kaufman
   Gloria Kui Melwani
   270 Madison Avenue
   New York, New York 10016
   Telephone: 212-545-4600
   Facsimile: 212-686-0114
   Email: kaufman@whafh.com
   Email: melwani@whafh.com

*Attorneys for Plaintiff*